IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DARYL J. KOLLMAN,                           Civil No. 1:04-CV-03106-CO

            Plaintiff

        v.                                  FINDINGS AND RECOMMENDATION


NATIONAL FIRE INSURANCE CO.
OF PITTSBURGH, PA, a foreign
corporation,


            Defendant
_____
CELL TECH INTERNATIONAL, INC.,
a Delaware corporation,
individually and on behalf of
its former directors, Marta
Carpenter, Donald Hateley,
John Neubauer, and Justin Straus,

    Plaintiff-In-Intervention,

        v.

NATIONAL UNION FIRE INSURANCE CO.
OF PITTSBURGH, PA, a foreign
corporation,

    Defendant-In-Intervention
_____

COONEY, Magistrate Judge:

Plaintiff Darryl J. Kollman ("Kollman" or "Plaintiff") brings this diversity action as a third party for statutory and contract insurer claims against defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National" or "Defendant"). Cell Tech International, Inc. ("Cell Tech II" or "Intervener") intervenes and brings an action for breach of contract, declaratory judgment and bad faith against National. Defendant moves for summary judgment. (#78). Plaintiff also moves for partial summary judgment (#89).

**I.**

**FACTS**

The court makes the following findings of fact:[1]

The New Earth Company ("NEC") was incorporated in 1989. (#97 Archer aff., Ex. A). The New Algae Company ("NAC") was incorporated in 1990. (#81 Philip aff., Ex. 1, p. 9). NEC and NAC did business as Cell Tech ("Cell Tech I"). (#94 Kollman dec., ¶11).

Prior to August 6, 1999, Daryl Kollman ("Kollman") and his then wife Marta Kollman (now his ex-wife Marta Carpenter) ("Carpenter") each owned 50% of the shares in NEC and NAC, and both were officers and directors of NEC and NAC. (#94 Kollman

---

[1]    The court's statement of facts takes into account its rulings on National's evidentiary objections, discussed *infra*, and the evidence which the parties have presented in support.

FINDINGS AND RECOMMENDATION - 1

dec., ¶13).

Because of Cell Tech I's financial problems in the late 1990's, Kollman and Carpenter consulted with the law firm of Hateley & Hampton, P.C., and specifically, lawyer Donald P. Hateley ("Hateley"), to assist them and Cell Tech I with those problems.  (#112 Philip aff., Ex. 1, pp. 7-8).

After Hateley & Hampton, P.C. was hired by Cell Tech I, Cell Tech I paid the law firm an average of $40,000 to $50,000 per month.  (#112 Philip aff., Ex. 2, p. 14).

In the spring of 1999, Hateley told Kollman about a plan to raise capital which included a merger with an existing publically traded corporation.  (#81 Philip aff., Ex. 8, pp. 9-10).  Hateley falsely advised Kollman that Kollman could not hold a director's position in a publically traded corporation because of Kollman's prior felony conviction.  (#81 Philip aff., Ex. 8, pp. 12-13). Kollman came to believe that this was all part of a plan by Carpenter, Hateley and others, to, among other things, remove Kollman from management, and terminate his employment.  (#81 Philip aff., Ex. 8, p. 12).

From August of 1990 until he resigned, Kollman was the CEO and Chairman of the Board of NEC and NAC.  (#81 Philip aff., Ex. 10, p. 30, lns. 10-14; #94 Kollman dec., ¶ 14).  In the summer of 1999 prior to the August 6, 1999 merger and because of Hateley's false representations, Kollman resigned his positions

as officer and director of both NEC and NAC.  (#94 Kollman dec.,
¶ 14; #81 Philip aff., Ex. 8, pp. 12-13).

On August 6, 1999, HumaScan, Inc., an existing Delaware
shell corporation ("HumaScan"), merged with NEC and NAC.  (#94
Kollman dec., ¶¶ 10-12).  As part of the reverse merger,
HumaScan acquired all of the stock of NEC and NAC, and changed
its name to Cell Tech International Incorporated ("Cell Tech
II").  (#94 Kollman, dec., ¶11).  As a result, NEC and NAC
became wholly owned subsidiaries of Cell Tech II.  (#94 Kollman
dec., ¶12).

In August of 1999, Carpenter became CEO and president and a
member of the Board of Directors of Cell Tech II, and Hateley
became Chairman of the Board of Directors of Cell Tech II. (#81
Philip aff., Ex. 8, p. 21; #94 Kollman dec., ¶16).

Carpenter and Hateley were directors of Cell Tech II from
August 6, 1999 up to at least the time Kollman filed this lawsuit
against National on November 9, 2004.  (#81 Philip aff., Ex. 8,
p. 21).

Though Kollman had been told that he would be running the
company after the merger, he discovered that he was just an
employee after August 6, 1999. (#112 Philip aff., Ex. 2, pp. 29-
30, Ex. 8, pp. 1-2).  Kollman was fired as an employee of Cell
Tech II on November 10, 1999.  (#112 Philip aff., Ex. 2, pp. 48,
49, and 53).

FINDINGS AND RECOMMENDATION - 3

Kollman was hired by Cell Tech II as a consultant in August of 2000 and subsequently terminated as a consultant on August 30, 2001. (#112 Philip aff., Ex. 2, p. 50, and Ex. 7; #109 Philip aff., Ex 1).

Kollman has never been an officer or director of Cell Tech II. (#94 Kollman dec., ¶ 15).

Shortly after the reverse merger, Cell Tech II entered into an agreement with Zubair Kazi ("Kazi") where for an investment of 1.6 million dollars, he received approximately 10% of outstanding stock of Cell Tech II. (#112 Philip aff., Ex. 6, pp. 7-11). The agreement also called for Kazi to receive additional shares upon the occurrence or non-occurrence of certain events. (#81 Philip aff., Ex. 8, pp. 15-17).

Hateley & Hampton, PC received $247,331.77 from the Kazi proceeds of which $147,331.77 was for services rendered for July through September 1999 and another $100,000.00 was a retainer for October and November of 1999. (#120 Moore aff., Ex. 20; #112, Philip aff., Ex. 6, p.8).

The issuance of further shares to Kazi had the effect of diluting the shares of the existing shareholders including Carpenter and Kollman. (#112 Philip aff., Ex. 1, pp. 16-17). Kollman was not told about the Kazi agreement and no shareholder approval was ever sought. (#112 Philip aff., Ex. 6, p. 9). Ultimately, the effect of the transaction made Kazi the majority

FINDINGS AND RECOMMENDATION - 4

shareholder in Cell Tech II. (#112 Philip aff., Ex. 1, p. 17, Ex. 2, pp. 74-75, and Ex. 6, pp. 10-11).

Carpenter and Hateley indirectly benefitted from the Kazi transaction by having Kazi become the majority shareholder, because this allowed Carpenter and Hateley to remain in control of Cell Tech II. (#112 Philip aff., Ex. 2, pp. 70-71).

After the reverse merger took place in 1999, Kollman repeatedly complained to Cell Tech II about his treatment, and demanded that John Neubauer be fired. (#112 Philip aff., Ex.'s 8-9).

Cell Tech II refused to accede to Kollman's demands. (#112 Philip aff., Ex. 16).

In 2001, Kollman wrote a series of letters to Hateley and to Deanne Hampton at Hateley & Hampton requesting among other things copies of the minutes of all board of directors meetings, and demanding that a shareholders meeting be held. (#112 Philip aff., Ex.'s 10-15).

Again Cell Tech II refused to accede to Kollman's demands. (#112 Philip aff., Ex. 2, pp. 84-85).

On October 7, 2002, Kollman filed a lawsuit against Cell Tech II, Carpenter and Hateley ("Hateley"), among others, entitled *Kollman v. Cell Tech et al.,* in Klamath County Circuit Court as Case No. 02-03774-CV ("State Court Action"). (#94 Kollman dec., ¶ 2). Carpenter accepted service of the State

FINDINGS AND RECOMMENDATION - 5

Court Action on October 18, 2002.  (#112 Philip aff., Ex. 21).

Kollman did not bring the lawsuit in collusion with any Cell Tech II officer, director, agent, employee or with Cell Tech II itself.  (#94 Kollman dec., ¶ 3).

On or about November 12, 2002, Cell Tech II's then counsel, Sarah J. Crooks, wrote to National and put it on notice that Kollman had filed the State Court Action against Cell Tech II, Carpenter, and Hateley among others.  (#81 Philip aff., Ex. 3; #97 Archer aff., Ex.'s C and D).

Kollman's complaint in the State Court Action evolved over time with the addition of claims, allegations, and defendants. (#97 Archer aff., Ex. C; #81 Philip aff., Ex. 8).

Kollman's allegations against Cell Tech II included derivative claims on behalf of Cell Tech II. (#81 Philip aff., Ex. 8, pp. 46-68).

On September 17, 2004, following a jury trial of more than six weeks, Kollman was awarded a limited judgment for $21,400,236 against Carpenter and $40,000,000 against Carpenter and Hartley. (#87 Moore aff., Ex. 3; # 94 Kollman dec., ¶ 4).

On November 8, 2004, after post-trial motions an amended limited judgment was entered, conforming to the court's post-verdict rulings on motions JNOV, and awarding Kollman a judgment in the amount of $40,000,000 against Carpenter and Hateley. (#87 Moore aff., Ex. 4, p. 2; #94 Kollman dec., ¶ 5).

FINDINGS AND RECOMMENDATION - 6

The award of damages was based on Carpenter's breach of her fiduciary duty of good faith and fair dealing by entering into an investment transaction in October of 1999 that diluted the value of Kollman's Cell Tech II's stock shares. (#90 Moore aff., Ex. 4, p. 2; #81 Philip aff., Ex. 5, pp. 2-3; #94 Kollman dec., ¶ 6).

Hateley was found to have aided and assisted Carpenter in her breach of fiduciary duties. (#90 Moore aff., Ex. 4, p. 2; #81 Philip aff., Ex. 8, pp. 20-24; #94 Kollman dec., ¶ 7).

Both Carpenter and Hateley were directors of Cell Tech II at the time the breach of fiduciary duties occurred. (#90 Moore aff., Ex. 4, p. 2; #81 Philip aff., Ex. 8, pp. 20-24; #94 Kollman dec., ¶ 5).

Kollman commenced this third party insurer action against National and others in Klamath County Circuit Court on November 9, 2004 to recover under the Policy that provides for coverage for Cell Tech II's directors. (#81 Philip aff., Ex. 9; #94 Kollman dec., ¶ 9).

The policy at issue is National's policy number 561-72-32 in which the named insured is Cell Tech II, and the policy period is from August 6, 2002 to August 6, 2003 (the "Policy"). The "Continuity Date" under the Policy is August 6, 1999. (#81 Philip aff., Ex. 2, p. 1).

National asked Carpenter for additional information for renewal of the Policy on July 30, 2002, including an "update on

current outstanding litigation". (#112 Philip aff., Ex. 25, p. 1).

On August 5, 2002, National confirmed a temporary and conditional binder of the Policy subject to the submission of outstanding additional information. (#112 Philip aff., Ex. 27, pp. 1-4).

On August 14, 2002, National issued the Policy without waiving its rights to "receive, review and approve" the additional information requested. (#112 Philip aff., Ex. 28).

Carpenter eventually responded with additional information on October 25, 2002 but did not disclose the existence of Kollman's State Court Action. (#112 Philip aff., Ex. 30, pp. 1-4).

National received notification of the State Court Action from Cell Tech II on or about November 12, 2002. (#97 Archer aff., Ex.'s C and D).

Carpenter was an officer and director of Cell Tech II during the policy period of the Policy. (#81 Philip aff., Ex. 8, p. 21).

Hateley was a director of Cell Tech II during the policy period of the Policy. (#81 Philip aff., Ex. 8, p. 21).

Kollman was a Cell Tech II shareholder during the policy period of the Policy. (#81 Philip aff., Ex. 8, p. 21).

On or about December 9, 2004, Cell Tech II's then counsel,

Stephen M. Feldman, wrote to and tendered a copy of the Eighth

Amended Complaint in the State Court Action to National

reiterating Cell Tech II's claim for coverage.  (#97 Archer aff.,

Ex. E).

Hateley filed for protection under Chapter 7 of the United

States Bankruptcy Code on October 12, 2005 in Case No. LA05-

40225-VZ, and received his discharge on July 11, 2006.[2]

The Policy states in pertinent part:

COVERAGE  A:  EXECUTIVE LIABILITY INSURANCE

This policy shall pay the Loss of any Insured Person
arising from a Claim made against such insured Person
for any Wrongful Act of such Insured Person, except
when and to the extent that an Organization has
indemnified such Insured Person.  Coverage A shall not
apply to Loss arising from a Claim made against an
Outside Entity Executive.

COVERAGE  B:  ORGANIZATION INSURANCE

I.    *Organization Liability:* This policy shall pay the
      Loss of any Organization arising from a Securities
      Claim made against such Organization.

ii.   *Indemnification of an Insured Person:* This policy
      shall pay the Loss of an Organization arising from
      a Claim made against an Insured Person (including
      an Outside Entity Executive) for any Wrongful Act
      of such Insured Person, but only to the extent
      that such Organization has indemnified such
      Insured Person.

(#81 Philip aff., Ex. 2, p. 4).

_____

[2]    The court takes judicial notice of these facts.  See,
Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002), and Lynch v.
Leis, 382 F.3d 642, 648, fn. 5 (6th Cir. 2004)(courts may take
judicial notice of court records that are available to the public
online).

FINDINGS AND RECOMMENDATION - 9

The Policy includes in pertinent part the following
definitions:

(b)  "Claim" means:  (1) a written demand for monetary,
non-monetary or injunctive relief; (2) a civil,
criminal, administrative, regulatory or arbitration
proceeding for monetary, non-monetary or injunctive
relief which is commenced by: (I) service of a
complaint or similar pleading;. . . .

The term "Claim" shall include any Securities Claim and
any Employment Practices Claim.

                          . . .

(j)  "Executive" means any: (1) past, present and
future duly elected or appointed director, officer,
trustee or governor of a corporation, management board
of a limited liability company (or equivalent
position); . . . .

(n)  "Insured" means any: (1) Insured Person; or (2)
Organization, but only with respect to a Securities
Claim.

(o)  "Insured Person" means any: (1) Executive of an
Organization; (2) Employee of an Organization; or (3)
Outside Entity Executive.

(p)  "Loss" means damages, settlements, judgments
(including pre/post judgment interest on covered
judgment), Defense Costs and Crisis Loss

(q)  "Management Control" means: (1) owing interests
representing more than 50% of the voting, appointment
or designation power for the selection of the majority
of: the Board of Directors of a corporation; the
management committee members of a joint venture; or the
members of the management board of a limited liability
company; or (2) having the right pursuant to written
contract or the by-laws, charter, operating agreement
or similar documents of an Organization, to elect,
appoint or designate a majority of the Board of
Directors of a corporation; the management committee
members of a joint venture; or the members of the
management board of a limited liability company.

. . .

(t)  "Organization" means: (1) the Named Entity; (2)
each Subsidiary; and (3) in the event a bankruptcy
proceeding shall be instituted by or against the
foregoing entities, the resulting debtor-in-possession
(or equivalent statute outside the United States), if
any.

. . .

(y)  "Securities Claim" means a Claim, other than an
administrative or regulatory proceeding against or
investigation of an Organization, made against any
Insured: (1) alleging a violation of any federal,
state, local or foreign regulation, rule or statute
regulating securities (including but not limited to the
purchase or sale or offer or solicitation of an offer
to purchase or sell securities) which is: (a) brought
by any person or entity alleging, arising out of, based
upon or attributable to the purchase or sale or offer
or solicitation or an offer to purchase or sell any
securities of an Organization; or (b) brought by a
security holder of an Organization with respect to such
security holder's interest in securities of such
Organization; or (2) brought derivatively on behalf of
the Organization by the security holder of such
Organization. . . .

(z)  "Subsidiary" means: (1) any for-profit entity that
is not formed as a partnership of which the Named
Entity has Management Control ("Controlled Entity") on
or before the inception of the Policy Period either
directly or indirectly through one or more other
Controlled Entities; and (2) not-for-profit entity
under section 501(c)(3) of the Internal Revenue Code of
1986 (as amended) sponsored exclusively by an
Organization.

(aa)  "Wrongful Act" means: (1) any actual or alleged
breach of duty, neglect, error, misstatement,
misleading statement, omission or act or any actual or
alleged Employment Practices Violation:

        (I) with respect to any Executive of an
        Organization, by such Executive in his or her
        capacity as such or any matter claimed
        against such Executive solely by reason of
        his or her status as such;  . . .

(#81 Philip aff., Ex. 2, pp. 5-9).

And in pertinent part the Policy provides for the following

exclusions:

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured: . . .

(i)   which is brought by or on behalf of an Organization or any Insured Person, other than an Employee of an Organization; or which is brought by any security holder or member of an Organization, whether directly or derivatively, unless such security holder's or member's claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Executive of an Organization or any Organization; provided, however, this exclusion shall not apply to: . . .

(4)   any claim brought by any past Executive of an Organization, who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an Organization for at least four (4) years prior to such claim being first made against any person . . . .

(#81 Philip aff., Ex. 2, pp. 9-10).

Under Organizational Changes, the Policy states:

12(d)   *Other Organizational Changes:*   In all events, coverage as is afforded under this policy with respect to a Claim made against any Organization and/or any Insured Person thereof shall only apply for Wrongful Acts committed or allegedly committed after the effective date such Organization becomes an Organization and such Insured Person becomes an Insured Person, and prior to the effective date that such

FINDINGS AND RECOMMENDATION - 12

Organization ceases to be an Organization or such
Insured Person ceases to be an Insured Person.  An
organization ceases to be an Organization when the
Named Entity no longer maintains Management Control of
an Organization either directly or indirectly through
one or more of its Subsidiaries.

(#81 Philip aff., Ex. 2, p. 16).

¶18 of the Policy states:

Except as provided in Clause 17 of the policy, no
action shall lie against the insurer unless, as a
condition precedent thereto, there shall have been full
compliance with all the terms of this policy, or until
the amount of the Insured's obligation to pay shall
have been finally determined either by judgment against
such Insured after actual trial or by written agreement
of the Insured, the claimant and the Insurer.

Any person or organization or the legal representative
thereof who has secured such judgment or written
agreement shall thereafter be entitled to recover under
this policy to the extent of the insurance afforded by
this policy.  No person or organization shall have any
right under this policy to join the insurer as a party
to any action against any Insured or Organization to
determine the Insured's liability, nor shall the
Insurer be impleaded by any Insured Person, their
spouse, any Organization or any legal representative of
the foregoing.

(#81 Philip aff., Ex. 2, p. 18).

Endorsement 12 to the Policy states:

PRIOR ACTS EXCLUSION
FOR LISTED ENTITIES

In consideration of the additional premium of $0,it is
hereby understood and agreed that the term Subsidiary
shall be amended to included the entity(ies) listed
below abut only for Wrongful Act committed by such
entity(ies) and/or any Insureds, thereof which occurred
subsequent to such entity's respective acquisition/-
creation date listed below or prior to the time that
Named Entity no longer maintains Management Control of
such entity(ies), respectively, either directly or

FINDINGS AND RECOMMENDATION - 13

indirectly through one or more other Subsidiaries.
Loss arising from the same or related Wrongful Act
shall be deemed to arise from the first such same or
relate Wrongful Act.

NAMED ENTITES(IES)              ACQUISITION/CREATION DATE
*HUMASCAN*                       *August 6, 1999*

(#81 Philip aff., Ex. 2, p. 50).

## II.

### LEGAL STANDARDS

Pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure, a moving party is entitled to summary judgment as a

matter of law "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact."  Fed.R.Civ.P. 56(c); Bhan v. NME Hosps., Inc.,

929 F.2d 1404, 1409 (9th Cir.), cert. denied, 502 U.S. 994

(1991).  The moving party bears the initial burden of proof.  See

Rebel Oil Company, Inc. v. Atlantic Richfield Company, 51 F.3d

1421, 1435 (9th Cir.), cert. denied, 516 U.S. 987 (1995).  The

moving party meets this burden by identifying portions of the

record on file which demonstrates the absence of any genuine

issue of material fact.  Id.

In assessing whether a party has met their burden, the court

must view the evidence in the light most favorable to the

nonmoving party.  Allen v. City of Los Angeles, 66 F.3d 1052 (9th

Cir. 1995).  All reasonable inferences are drawn in favor of the

FINDINGS AND RECOMMENDATION - 14

nonmovant.  Id.  If the moving party meets their burden, the burden shifts to the opposing party to present specific facts which show there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); Auvil v. CBS 60 Minutes, 67 F.3d 816 (9th Cir. 1995), cert. denied, 517 U.S. 1167(1996).  The nonmoving party cannot carry their burden by relying solely on the facts alleged in their pleadings.  Leonard v. Clark, 12 F.3d 885, 888 (9th Cir. 1994).  Instead, their response, by affidavits or as otherwise provided in Rule 56, must designate specific facts showing there is a genuine issue for trial.  Id.

## III.

## DISCUSSION

A.  Defendant's Motion for Summary Judgment

Defendant argues that:

1.  The insured vs. insured exclusion in the Policy excludes coverage for Kollman's claims against Carpenter and Hateley as Kollman was an insured under the Policy along with Carpenter and Hateley.

Plaintiff responds that:

1.  The underlying lawsuit was non-collusive and therefore as a matter of Oregon law the insured vs. insured exclusion in the Policy does not apply.

2.  The definition of insured person is ambiguous as applied to the facts of this case.

FINDINGS AND RECOMMENDATION - 15

Intervener responds that:

1.    The term "Insured Person" as used in the exclusion is ambiguous, because it can reasonably be interpreted to not include any person unless that person was an executive of a corporate entity during a time that such entity was under Cell Tech II's control.  The Court should resolve any resultant ambiguity against National.

2.    National has not presented any facts that show that Kollman is an "Insured Person" as Kollman was not an executive of a corporate entity during a time that such entity was under Cell Tech II's control.

3.    At the very least, there is a genuine issue of fact as to whether Kollman is an "Insured Person" as Kollman was not an executive of a corporate entity during a time that such entity was under Cell Tech II's control.

4.    Insured v. insured exclusions apply only where the underlying lawsuit is collusive in nature and National has not presented any evidence that the underlying suit was collusive.

Defendant replies that:

1.    This court should give effect to the plain language of the "insured vs. insured" exclusion in the Policy.

2.    The "insured vs. insured" exclusion's purpose is not limited to precluding coverage for collusive lawsuit, but also is intended to preclude coverage for internecine warfare or disputes

FINDINGS AND RECOMMENDATION - 16

between and among those who are or were leaders of the corporations involved.

    3.   The *MegAvail* case cited by opposing parties is distinguishable from the case before the court.

B.   <u>Plaintiff's Motions for Partial Summary Judgment</u>[3]

    <u>Kollman's Motion's 1 & 2 - AD #1 (loss not covered) &</u>

    <u>AD #2 (an insured)</u>[4]

    Plaintiff argues that:

    1.   His claim involves a loss for which coverage is provided under the Policy.

    2.   He was not an insured person under the Policy.

    Defendant responds that:

    3.   A Rule 56(f) continuance is necessary so that it has a fair opportunity to complete discovery as to the issues Kollman raises in his motion.

    4.   Kollman was an insured person and his claims are

---

[3]    Because Motions 1 and 2 directly relate to Defendant's Motion for Summary Judgment, the contentions of the parties are set forth below.  With respect to the numerous other motions on each of the Defendant's Affirmative Defenses, the contentions of the parties are set forth at the beginning of the specific discussion of each of those motions.

[4]    After Kollman's motions for partial summary judgment were fully briefed by the parties, National filed an answer to Kollman's amended complaint. (#124 National's Answer to Amended Complaint). In that answer, National asserted the same but not all of the affirmative defenses it had in its original answer.  The affirmative defenses ("AD") are numbered to be consistent with National's Answer to Amended Complaint.

unambiguously excluded from coverage.

Plaintiff replies that:

1.    The insured vs. insured exclusion does not apply to him, and *Megavail* precludes the application of insured vs. insured in this case.

Was the Loss Covered

National relies on its assertion that Kollman is an insured in response to the issue of whether the loss was covered. A finding regarding whether Kollman was an insured resolves this issue.

Was Kollman an Insured

National has asserted that Kollman was an insured under the Policy and seeks to invoke the insured vs. insured exclusion clause which excludes claims:

> [B]rought by or on behalf of an Organization or
> any Insured Person, other than an Employee of an
> Organization; or which is brought by any security
> holder or member of an Organization, whether directly
> or derivatively, unless such security holder's or
> member's claim is instigated and continued totally
> independent of, and totally without the solicitation
> of, or assistance of, or active participation of, or
> intervention of, any Executive of an Organization or
> any Organization . . ..

(#81 Philip aff., Ex. 2, p. 10)(the "Insured Exclusion Clause").

National argues that Kollman is an insured under the Policy because he was a past officer and director of two corporations which are now Cell Tech II's subsidiaries, he was an employee of Cell Tech II, and he was a consultant to Cell Tech II.

FINDINGS AND RECOMMENDATION - 18

"Interpretation of an insurance policy is a question of law, and our task is to ascertain the intention of the parties." Holloway v. Republic Indemnity Company of America, 341 Or. 642, 650 (2006) (citations omitted).    The parties' intention is based upon the terms and conditions of the policy.    Id.    The words in the policy are presumed to have been used in their primary and general meaning.    ORS 42.250.    An insurance policy should be interpreted in accordance with the understanding of an ordinary purchaser of insurance.    Botts v. Hartford Accident & Indemnity Co., 284 Or. 95, 100 (1978).

Executive liability insurance under the Policy provides that the policy "shall pay the Loss of any Insured Person arising from a Claim made against such insured Person for any Wrongful Act of such Insured Person, except when and to the extent that an Organization has indemnified such Insured Person".
(#81 Philip aff., Ex. 2, p. 4).

"Insured person" as defined in the Policy includes both executives and employees. (#81 Philip aff., Ex. 2, p. 7).    The Policy has a "continuity date" of August 6, 1999, and contains a prior acts exclusion for Humascan (now Cell Tech II) before August 6, 1999. (#81 Philip aff., Ex. 2, pp. 2 and 50).

As stated by National, the time a claim is made is the relevant time to determine whether that person is an insured under an "insured v. insured" exclusion.    See, Township of

<u>Center, Butler County, Pa. v. First Mercury Syndicate, Inc.</u>, 117
F.3d 115, 118-119 (3rd Cir. 1997).

An "Insured" is: "A person who is covered or protected by an
insurance policy."  Black's Law Dictionary 823 (8th Ed. 2001).

<u>Kollman as Executive</u>

Prior to August 6, 1999, Kollman was an executive of two
entities (collectively "Cell Tech I") which subsequently became
subsidiaries of Cell Tech II on August 6, 1999.  (#81 Philip
aff., Ex. 10, p. 30; #94 Kollman dec., ¶¶ 12 and 14).

The Policy provides in pertinent part:

> In all events, coverage as is afforded
> under this policy with respect to a Claim
> made against any Organization and/or any
> Insured Person thereof shall only apply for
> Wrongful Acts committed or allegedly
> committed after the effective date such
> Organization becomes an Organization and such
> Insured Person becomes an Insured Person ...
> .

(#81 Philip aff., Ex. 2, p. 16).

Endorsement 12 to the Policy states:

PRIOR ACTS EXCLUSION
FOR LISTED ENTITIES

In consideration of the additional premium of $0,it is
hereby understood and agreed that the term Subsidiary
shall be amended to included the entity(ies) listed
below abut only for Wrongful Act committed by such
entity(ies) and/or any Insureds, thereof which occurred
subsequent to such entity's respective acquisition/
creation date listed below or prior to the time that
Named Entity no longer maintains Management Control of
such entity(ies), respectively, either directly or
indirectly through one or more other Subsidiaries.
Loss arising from the same or related Wrongful Act

FINDINGS AND RECOMMENDATION - 20

shall be deemed to arise from the first such same or
relate Wrongful Act.

| NAMED ENTITES(IES) | ACQUISITION/CREATION DATE |
|---|---|
| *HUMASCAN* | *August 6, 1999* |

(#81 Philip aff., Ex. 2, p. 50).

Any wrongful acts which were committed by Kollman as an
executive of Cell Tech I were not insured under the Policy
because of the Prior Acts Exclusion, and the "acquisition/
creation date" of August 6, 1999.  The Policy afforded Kollman
no protection as a former executive of Cell Tech I.

Given these facts, an ordinary purchaser of insurance would
understand that Kollman is not an insured under the Policy as a
former executive of Cell Tech I.  Kollman as a former executive
of Cell Tech I is not precluded from asserting a claim as a
result of the insured v. insured exclusion.

Kollman as Consultant

Kollman was a consultant to Cell Tech II from August 2000 to
August 30, 2001.  (#112 Philip aff., Ex. 2, p. 50, Ex. 7; #109
Philip aff., Ex. 1).

"If an insurance policy explicitly defines the phrase in
question, [Oregon courts] apply that definition."  Holloway, 341
Or. 642, 650 (2006).  "Insured Person" as defined under the
Policy does not include a consultant to Cell Tech II.

Even if Kollman arguably might have been covered as a
consultant in 2000 and 2001, Kollman was not a consultant during

FINDINGS AND RECOMMENDATION - 21

the Policy period at issue here which was August 6, 2002 to
August 6, 2003. (#81 Philip aff., Ex. 2, p. 1).  See, <u>Township of
Center, Butler County, Pa. v. First Mercury Syndicate, Inc.</u>, 117
F.3d 115, 119 (3rd Cir. 1997)("[T]he relevant time period for
determining the status of an insured for the purposes of the
exclusion should be when the claim is made.")

Kollman as a consultant is not precluded from asserting a
claim as a result of the insured v. insured exclusion.

<u>Kollman as Employee</u>

Kollman was also an employee of Cell Tech II from August 6,
1999 to November 10, 1999. (#112 Philip aff., Ex. 2, pp. 48-53,
Ex. 8, pp. 1-2).  An employee is an insured person under the
Policy.  However, Kollman was not an employee during the Policy
period at issue here which was August 6, 2002 to August 6, 2003.
(#81, Philip aff., Ex. 2, p. 1).  See, <u>Township of Center, Butler
County, Pa. v. First Mercury Syndicate, Inc.</u>, 117 F.3d 115, 119
(3rd Cir. 1997)("[T]he relevant time period for determining the
status of an insured for the purposes of the  exclusion should be
when the claim is made.")

Even if Kollman as an employee is arguably an insured under
the Policy, the Insured Exclusion Clause specifically carves out
an exception for employees:

> The Insurer shall not be liable to make any payment for
> Loss in connection with any Claim made against an
> Insured: . . .

FINDINGS AND RECOMMENDATION - 22

        (I)   which is brought by or on behalf of an
              Organization or any Insured Person, **other
              than an Employee of an Organization**. . . .

(#81 Philip aff., Ex. 2, p. 10) (emphasis added).  Kollman as an

employee is not precluded from asserting a claim as a result of

the insured v. insured exclusion.

        <u>Kollman as Shareholder</u>

        Finally, at all relevant times, Kollman was a shareholder of

Cell Tech II.  (#81 Philip aff., Ex. 8, p. 21).  The Insured

Exclusion Clause excludes a security holder's claim unless it

was: "instigated and continued totally independent of, and

totally without the solicitation of, or assistance of, or active

participation of, or intervention of, any Executive of an

Organization or any Organization".  (#81 Philip aff., Ex. 2, p.

50).  It is undisputed in the record that Kollman did not collude

with any insured or with any executive or with Cell Tech II in

bringing his claim. (#94 Kollman dec., ¶3).  Kollman as a

shareholder is not precluded from asserting a claim.

        The court finds that the language in Policy is clear and

unambiguous, Kollman was not an insured under the Policy, and the

insured v. insured exclusion does not preclude coverage for his

claims.  National's Motion for Summary Judgment should be denied

and Kollman's Motions for Partial Summary Judgment as to AD #'s 1

and 2 should be granted.

C.    Kollman's Remaining Motions for Partial Summary Judgment

      Rule 56(f) Motions

In response to Kollman's Motions, National has moved for a Rule 56(f) continuance in its response. Kollman has joined National's request in his reply but only with respect to Motion No. 32.

The Ninth Circuit has stated:

> [T]he defendants must show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are "essential" to resist the summary judgment motion.

State of California v. Campbell, 138 F.3d 772, 779 (9th Cir.), cert. denied, 525 U.S. 822 (1998).

National's attorney, Neil J. Philip, has stated in general terms that National has not yet completed discovery, and that he believes based upon prior discovery that additional discovery including the depositions of 12 named individuals will "provide evidence relevant to the coverage issues". (#112 Philip aff., ¶¶ 2-5). Philip's affidavit fails to set forth the specific facts National hopes to elicit or that the facts exist, or that the facts are essential to resist Kollman's motions.

Kollman has not requested a continuance to conduct discovery, rather Kollman has requested a continuance of only Motion 32 pending the resolution of an adversary proceeding in

FINDINGS AND RECOMMENDATION - 24

Hateley's bankruptcy case.  (#119 Kollman's Reply, pp. 34-35).[5]

The court finds that neither National nor Kollman has satisfied the requirements for a Rule 56(f) continuance. National and Kollman's requests for continuance should be denied.

National's Evidentiary Objections

In response to Kollman's concise statement of fact, National has made several evidentiary objections.  First, National asserts that ¶9 of Kollman's concise statement is vague, ambiguous and unsupported by citation.  ¶9 states:  "Kollman did not bring this lawsuit in collusion with any Cell Tech II officer, director, agent, employee, or with any other person, or with Cell Tech II itself."  The citation given is Kollman's declaration.  In that declaration, Kollman states:  "I did not bring this lawsuit in collusion with any Cell Tech II officer, director, agent, employee, or with Cell Tech II itself."

The phrase "or with any other person" is not supported by the citation to Kollman's declaration and will be stricken.  The court finds that the remainder of Kollman's concise statement is neither vague nor ambiguous.

National also objects to Kollman's concise statement ¶ 23 as conclusionary, and statements ¶'s 24 and 25 as conclusionary and

---

[5]    As more fully set forth in the discussion of Motion 32 *infra*, whether or not Hateley has received a discharge of Kollman's debt is irrelevant to National's liability for the debt under the Policy.

FINDINGS AND RECOMMENDATION - 25

lacking foundation, and that all of these statements are irrelevant to any issues in its motion.

The court has judicially noticed the relevant facts with respect to the Hateley bankruptcy, and finds that the remaining statements are not relevant to any issue before the court.

<u>Kollman's Motions 3, 8 & 16 - AD #'s 3 (notice), 8 (claim first made) & 14 (notice and claim provisions)</u>

Kollman argues that after he filed his lawsuit on October 7, 2002, the Cell Tech II defendants gave National notice on November 14, 2002, notice was timely, the notice and claim provisions of the policies were followed.

National agrees that it received notice of the lawsuit on or about November 14, 2002 but responds that Kollman made his "Claim" as defined by the Policy as early as 1999 and continuing into 2001. National relies upon a series of letters which Kollman wrote in 1999 and 2001 to the Cell Tech II defendants.

In the 1999 letters, Kollman complained about the way Carpenter was treating him, complained that Carpenter's actions were detrimental to Cell Tech II, and requested that John Neuberger be fired.

In the 2001 letters, Kollman made demands that Cell Tech II hold a shareholder's meeting, that he be provided with "copies of all official board of directors meetings, minutes, agendas, tapes and conclusions", and that the failure to meet his demands would

result in a civil suit under ORS 60.301.  (# 112 Philip aff., Ex. 8-15).

    "Claim" as defined in the Policy is:

    (1) a written demand for monetary, non-monetary or
    injunctive relief; (2) a civil, criminal,
    administrative, regulatory or arbitration proceeding
    for monetary, non-monetary or injunctive relief which
    is commenced by: (I) service of a complaint or similar
    pleading;
                       . . .

    The term "Claim" shall include any Securities Claim and
    any Employment Practices Claim.

(#81 Philip aff., Ex. 2, P. 5).

    Reviewing the evidence in the light most favorable to the non-moving party, the court assumes that the demands made by Kollman were written non-monetary claims.  However, the issue is not whether non-monetary claims were made in 1999 and 2001, the issue is whether they can be considered the same claims asserted by Kollman in the State Court Action in 2002.

    In the State Court Action, there is no claim for relief under ORS 60.301, there is no claim for relief with respect to holding shareholder meetings, and there is no claim for relief with respect to providing "copies of all official board of directors meetings, minutes, agendas, tapes and conclusions". (#81 Philip aff., Ex. 8).

    The court finds that there were no claims "commenced by . . . the service of a complaint or similar pleading" with respect to the written non-monetary claims made in 1999 and 2001.

FINDINGS AND RECOMMENDATION - 27

Other than the fact that Kollman made various demands over the years, National has failed to present any evidence that any demand was made to Cell Tech II, Carpenter and/or Hateley prior to the policy period in 2002 in connection with Carpenter's breach of fiduciary duty with respect to the Kazi investment transaction.

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986) (citations omitted).

On the evidence presented by National, the court finds that no reasonable jury could conclude that Kollman's demands in 1999 and 2001 were demands for "monetary, non-monetary or injunctive" relief regarding the Kazi investment transaction.

Kollman's motions for partial summary judgment as to AD #'s 3, 8 and 14 should be granted.

Kollman's Motion 4 - AD #4 (profit or advantage)

Kollman argues that loss for which coverage is sought does not arise out of, and is not based upon, gaining any profit or advantage to which the insured is not legally entitled.

National responds that Kollman should be judicially estopped from taking a position in this case which is contrary to the arguments he and his counsel made in the State Court Action.

FINDINGS AND RECOMMENDATION - 28

The Ninth Circuit has listed the factors a court should consider in applying the doctrine of judicial estoppel

> [S]everal factors typically inform the decision
> whether to apply the doctrine in a particular case:
> First, a party's later position must be "clearly
> inconsistent with its earlier position.  Second, courts
> regularly inquire whether the party has succeeded in
> persuading a court to accept that party's earlier
> position, so that judicial acceptance of an
> inconsistent position in a later proceeding would
> create "the perception that either the first or second
> court was misled", *Edwards*, 690 F.2d at 599.  Absent
> success in a prior proceeding, a party's later
> inconsistent position introduces no "risk of
> inconsistent court determinations," *United States v.
> CIT Constr. Inc.,* 944 F.2d 253, 259 (C.A.5 1991), and
> thus no threat to judicial integrity.  A third
> consideration is whether the party seeking to assert an
> inconsistent position would derive an unfair advantage
> or impose an unfair detriment on the opposing party, if
> not estopped.

<u>Hamilton v. State Farm Fire & Cas. Co.</u>, 270 F.3d 778, 782-783 (9th Cir. 2001)(some citations omitted).

Here, while Kollman argued to the court in the State Court Action that monies were received by Hateley to which he was not entitled, the trial court found that "Plaintiff has offered no evidence that the fees were unreasonable or should not have been paid by the corporation."  (#81 Philip aff., Ex. 5, p. 5).

While Kollman also argued to the jury and the trial court that Carpenter and Hateley set up the Kazi transaction in order to obtain an unfair advantage over him, there are no such findings by either the jury or the trial court to that effect. (#81 Philip aff., Ex.'s 4 and 5).  Kollman prevailed only on

FINDINGS AND RECOMMENDATION - 29

Count One of the Third Claim for Relief to the Eighth Amended
Complaint. (#81 Philip aff., Ex. 6). The trial court found
that the damages claimed in Count One "are the dilution in the
value of the shareholder's interest in the corporation". (#81
Philip aff., Ex. 5, p. 2). Kollman asked for relief because the
Kazi transaction resulted in the diminution of the value of his
stock and not because the Kazi transaction was set up to obtain
an unfair advantage over him. (#81 Philip aff., Ex. 8, pp. 20-
24). The Amended Limited Judgment entered in the State Court
Action awards a monetary judgment only on Count One of Kollman's
Third Claim for Relief (#81 Philip aff., Ex.6, p. 2).

Given the jury verdict, the findings of the trial court and
the Amended Limited Judgment, the court finds that Kollman had
no "prior success" on any claims of "profit or advantage to which
the insured was not legally entitled".

Neither the jury nor the trial court adopted Kollman's
positions regarding profit or advantage. Kollman is not
judicially estopped from asserting his current position. See,
Masayesva v. Hale, 118 F.3d 1371, 1382 (9th Cir. 1997)("court
must adopt position for judicial estoppel to apply")(citation
omitted).

National cites to TIG Specialty Ins. Co. v. Pinkmonkey.com
Inc., 375 F.3d 365, 370 (5th Cir. 2004) for the proposition that
an insured "is not legally entitled to an advantage or profit

resulting from his violation of law if he could be required to return such profit."  In this instance, National has not set forth any facts which support its position that the Cell Tech II defendants violated any law which would require them to return a profit resulting from any such violation.

The court finds that National has not raised a genuine issue of fact regarding AD #4.  Kollman's motions for partial summary judgment as to AD # 4 should be granted.

Kollman's Motion 5 - AD #5 (payments to an insured)

Kollman argues that the loss for which coverage is sought is not a claim "arising out of, based upon or attributable to payments to an insured of any remuneration. . .  ."

National responds that the loss for which Kollman seeks recovery arises from wrongful payments to the insured and in particular the fees paid to Hateley from the Kazi transaction.

As set forth in the discussion above, the loss arises from a claim that Carpenter breached her fiduciary duty, and Hateley aided and abetted her, which resulted in the diminution of the value of Kollman's stock.

The court finds that there is no genuine issue of fact regarding AD #5.  Kollman's motion for partial summary judgment as to AD # 5 should be granted.

FINDINGS AND RECOMMENDATION - 31

<u>Kollman's Motions 6 & 12 - AD's #7 (uninsured acts) & #11</u>

<u>(judgment debtors not insured)</u>

Kollman argues that the loss for which coverage is sought

(1) does not arise out of an uninsured act of the insured, and

(2) the defendants were insured under the terms, conditions, and

limitations of the policies.

National responds that to the extent that an exclusion or

one of National's affirmative defenses is applicable, any

"Wrongful Act" that the insured committed would not be insured by

the policy.

National has not set forth any facts which support its

position.  National admits that both Carpenter and Hateley were

insured persons.  (#79 National's Memorandum in Support of Motion

for SJ, p. 11).

The court finds that there is no genuine issue of fact

regarding AD's #7 and #11.  Kollman's motions for partial summary

judgment as to AD #'s 7 and 11 should be granted.

<u>Kollman's Motion 9 - AD #9 (material misrepresentations)</u>

Kollman argues there is no issue of fact as to whether Cell

Tech II made misrepresentations to National during the

application process.

National responds that the evidence demonstrates that in

1999, Kollman was already making claims and the Kazi transaction

was close to being completed, when Carpenter stated in the

application that she was not aware of any claims, or acts, errors or omissions that might give rise to a claim.  National also responds that during the renewal process in 2002, Carpenter did not disclose that she and Cell Tech II had been sued by Kollman. National further responds that if National had known about the lawsuit that had just been filed it would not have allowed the policy to take effect.

ORS 742.013 (1) states in pertinent part:

> Misrepresentations, omissions, concealments of fact and incorrect statements shall not prevent a recovery under the policy unless the misrepre-sentations, omissions, concealments of fact and incorrect statements:
>        * * *
> (c) Are either:
>  (A) Fraudulent; or
>  (B) Material either to the acceptance of the risk or to the hazard assumed by the insurer.

ORS 742.013 (1).

<u>The 1999 Letters</u>

The original application for insurance was signed by Carpenter, then known as Marta Kollman, on October 15, 1999. (#112 Philip aff., Exhibit 34, p.3).  Prior to that date, on or about August 16 or 17, 1999, and on August 18, 1999, Kollman sent two letters to Don Hateley.  Carpenter was copied on both letters.  In his first letter, Kollman stated, among other things, that Carpenter had betrayed him, she threatened to fire him, she offered to buy him out, and she insulted him by offering him a position as a consultant.  Kollman claimed Carpenter's

FINDINGS AND RECOMMENDATION - 33

actions were "massively detrimental to the growth and prosperity
of Cell Tech", and as a 40% shareholder he demanded "immediate
action".  Kollman also requested that John Neubauer be terminated
immediately. (#112 Philip aff., Ex 8, pp. 1-2).

In his second letter, Kollman states that, among other
things, he is offended that a board meeting was held secret from
him, that he is important to the company, if the distributors
knew what was in John's e-mail, thousands of them would be
demanding John be fired, and that he, Kollman, has the ability to
outbid Hateley for the company.  Kollman ends this letter by
stating if Hateley doesn't respond within forty-eight hours,
Kollman will assume that Hateley's intentions are dishonorable.
(#112 Philip aff., Ex 9, pp. 1-2).

On July 30, 2002, National requested information on "status
on recent dispute between shareholders".  (#112 Philip aff., Ex.
35, p. 1).

Notwithstanding National's knowledge of a dispute between
the shareholders, on August 5, 2002, National confirmed a binder,
and then on August 14, 2002, National issued the Policy.  (#112
Philip aff., Ex. 28, p. 1).

In response to National's request, on October 25, 2002,
Carpenter stated that the Kollman's divorce proceedings commenced
in 1999 were finally concluded in May of 2002 and the ownership
and management of Cell Tech II had been resolved in her favor.

(#112 Philip aff., Ex. 27, pp. 1-4, Ex. 30, pp. 1 and 3-4).

The court finds that the 1999 letters show Kollman was hostile to Cell Tech II and its principals.  The court also finds that National was willing to issue the Policy knowing that an acrimonious divorce proceeding existed between Kollman and Carpenter.

> "The strong public policy that supports the enforcement of contracts as made can be outweighed only by a showing that the party seeking to avoid was really misled, that is, he would not have made the contract if he had known the facts misrepresented."

Santilli v. State Farm Life Ins. Co., 278 Or. 53, 58 (1977)(citation omitted).

Based upon these findings, the court finds that no reasonable jury could conclude that the 1999 letters were "material either to the acceptance of the risk or to the hazard assumed by the insurer".

### The Kazi Investment Transaction

With respect to the Kazi investment transaction, National admits that it was not completed at the time Cell Tech II first applied for the insurance.  The court finds as a matter of law that Cell Tech II had no duty to disclose any information regarding the incomplete Kazi transaction at the time of Cell Tech II initial application for insurance.

### The State Court Action

Finally, National asserts that it would not have issued the

FINDINGS AND RECOMMENDATION - 35

Policy if it had known that Kollman had filed suit against
Carpenter and Cell Tech II.   The facts are not at issue:

> 1.   On August 5, 2002, National confirmed a temporary and
> conditional binder of the Policy subject to the submission
> of outstanding additional information.  (#112 Philip aff.,
> Ex. 27, p. 1-4).
>
> 2.   On August 14, 2002, National issued the Policy without
> waiving its rights to "receive, review and approve" the
> additional information requested.  (#112 Philip aff., Ex.
> 28).
>
> 3.   On October 7, 2002, Kollman filed the State Court
> Action.   (#94 Kollman dec., ¶ 2).
>
> 4.   Carpenter accepted service of the State Court Action on
> October 18, 2002.  (#112 Philip aff.,  Ex. 21).
>
> 5.   Carpenter eventually responded with additional
> information to National on October 25, 2002 but did not
> disclose the existence of Kollman's October 7, 2002 lawsuit.
> (#112 Philip aff., Ex. 30, pp. 1-4).

The court finds that National could not have relied upon
Carpenter's non-disclosure of the Kollman lawsuit in issuing the
Policy as National issued the Policy almost 2 months before the
State Court Action was ever filed or served.

Kollman's motions for partial summary judgment as to AD # 9
should be granted.

FINDINGS AND RECOMMENDATION - 36

Kollman's Motion 10 -AD #10 (diminished coverage)

National's AD #10 provides:

> To the extent that the terms of the limits of the
> policy under which coverage is sought have been eroded
> by payment of other claims or the payment of defense
> costs, there may be no coverage or the limits available
> for coverage for the claimed loss may be diminished.

(#124 National's ans., p. 6, ¶10).

Kollman argues that there is no evidence of payment of other

claims.

National responds that while it has not made payments for

the costs of defense, Cell Tech II has intervened in this case

and is claiming it is entitled to full payment of the same policy

limits for its defense costs.

National has not presented any evidence in opposition that

it has actually made any payments.  However, reviewing the

evidence in the light most favorable to the non-moving party, the

court finds that there is an issue of fact regarding whether Cell

Tech II is entitled to defense costs, and this may diminish the

coverage for the claimed loss.  Kollman's motion for partial

summary judgment as to AD # 10 should be denied.

Kollman's Motion 13 - AD #12 (uncovered loss)

Kollman argues that the claimed loss does not include civil

or criminal fines or penalties, taxes, punitive damages or

exemplary damages, the multiplied portion of multiple damages,

any amounts for which the insured is not financially liable or

FINDINGS AND RECOMMENDATION - 37

which are without legal recourse to the insured and matters which
may be deemed uninsurable under the laws pursuant to these
policies.

National responds that it needs to conduct more discovery to
ascertain what comprised the loss.  However, National has not
stated what facts it hopes to uncover with additional discovery,
and accordingly the court has denied National's request.

The uncontroverted evidence before the court is that the
judgment which was awarded Kollman was based upon "the dilution
in the value of the shareholder's interest in the corporation".
(#81 Philip aff., Ex. 5, p. 2).   The court finds that the loss
does not include amounts for which there is no coverage.
Kollman's motion for partial summary judgment as to AD # 12
should be granted.

<u>Kollman's Motion 15 - AD #13 (other than wrongful act)</u>

Kollman argues that the loss did not arise out of something
other than a wrongful act, as that term is defined in the Policy.

National responds that even assuming the loss arose from a
wrongful act, it may not have been a covered wrongful act.

AD #13 states: "To the extent the loss arises out of
something other than a wrongful act, as that is defined in the
policies, there is no coverage".  (#124 National's Answer and
Affirmative Defenses to Plaintiff's Civil Amended Complaint,
p. 7, ¶13).

National has presented no evidence which would give rise to a genuine issue of fact that the loss arose other than from a wrongful act as defined in the Policy.

Kollman's motion for partial summary judgment as to AD # 13 should be granted.

Kollman's Motion 17 - AD #15 (ADR)

Kollman argues that the court has subject matter jurisdiction because the Alternative Dispute Resolution ("ADR") provision, ¶ 17 of the Policy, does not apply to his claim. Kollman argues that he is not an insured, he was not a party to the Policy, and National has waived its right to arbitrate.

National responds that Kollman stands in the shoes of Carpenter and Hateley for the purposes of attempting to collect from National, and that Kollman is an insured. Therefore National responds that Kollman is bound by the ADR provision of the policy.

The court has made a finding that Kollman is not an insured under the Policy. The only issue is whether Kollman stands in the shoes of Carpenter and Hateley with respect to the ADR provision.

The ADR provision states that either the Insurer or an Insured may elect one of two methods for alternative dispute resolution: non-binding mediation or binding arbitration. It also provides "The Named Entity shall act on behalf of each and

FINDINGS AND RECOMMENDATION - 39

every Insured in deciding to proceed with an ADR process under this clause." (#81 Philip aff., Ex. 2, pp. 17-18). The plain language of this portion of the ADR provision is clearly inconsistent with National's position that Kollman as a claimant stands in the shoes of Carpenter and Hateley and must arbitrate.

As the Fifth Circuit has stated, "We are unaware of any federal policy that favors arbitration for parties who have not contractually bound themselves to arbitrate their disputes." Talbott Big Foot, Inc. v. Bourdreaux, 887 F.2d 611, 614 (5th Cir. 1989).

> "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

Van Ness Townhouses v. Mar Industries Corp., 862 F.2d 754, 758 (9th Cir. 1989).

Even if the ADR provision were applicable to Kollman, the court finds as a matter of law that National has waived any right to arbitration. This action has been pending over two years. National has been a party to this action since it answered on December 17, 2004. There is one loss arising from a judgment under a single legal theory. Even if National had a right to ADR, it has not availed itself of any such right by bringing a motion to compel before the court, and Kollman has been

FINDINGS AND RECOMMENDATION - 40

prejudiced as he has relied to his detriment on National's failure to move for arbitration.

Finally, both § 18 of the Policy and ORS § 742.031 give Kollman as a judgment claimant a direct right of action against National. See, Hecht v. James and Farmers Mut. Ins. Co., 218 Or. 251, 255 (1959). Kollman's direct right of action against National would be superfluous if he were first required to arbitrate under § 17 of the Policy.

Kollman's motion for partial summary judgment as to AD # 15 should be granted.

Kollman's Motions 18 & 30 (AD #'s 16 (conditions precedent) & 20 (garnishment)

Kollman argues that the conditions precedent in § 18 of the Policy have been met and he is entitled to bring an action against National by ways other than garnishment.

National responds that § 18 of the Policy precludes Kollman's direct action against National.

Kollman replies that the motions should be granted because the court has already ruled against National and found that Kollman's judgment is final.

As the court has previously found, the three requirements for a judgment to be appealable and enforceable under Oregon law have been met in this case. (#51 Findings and Recommendation filed on June 13, 2005; #55 Order adopting findings and

FINDINGS AND RECOMMENDATION - 41

recommendations filed on September 7, 2005).  See, <u>Garcia v.</u>
<u>Oregon Department of Motor Vehicles</u>, 195 Or. App. 604, 609
(2004).

Kollman's motions for partial summary judgment as to AD # 16
and 20 should be granted.

<u>Kollman's Motions 21 & 22 - AD #'s 17 (public policy) & 18</u>
<u>(unclean hands)</u>

Kollman argues that payment for any loss would not be
against any public policy, and that he is not precluded from
recovery under the doctrine of unclean hands.

National responds that allowing payment where the insureds
engaged in fraudulent conduct, and made material
misrepresentations in its application for insurance, thereby
having "unclean hands", would be against public policy.

AD #17 states:  "To the extent that payment for any loss
would be against public policy, there is no coverage."  (#124,
National's ans., p. 7).

> [I]n the face of the Defendant's properly supported
> motion for summary judgment, the Plaintiff could not
> rest on his allegations of a conspiracy to get to a
> jury without "any significant probative evidence
> tending to support the complaint."

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).

The court finds that the evidence when viewed in the light
most favorable to National shows that the insureds, Carpenter and
Hateley, performed a series of acts to gain control of Cell Tech

FINDINGS AND RECOMMENDATION - 42

II.  The court further finds there is no evidence in the record other than bare allegations that the insureds actions were fraudulent.

As more fully set forth above with respect to Kollman's Motion 9 *supra*, the court found that no reasonable jury could conclude that Cell Tech II made any misrepresentations which were "material either to the acceptance of the risk or to the hazard assumed by the insurer".

Based upon the foregoing, the court finds that payment for any loss would not be against public policy.

AD # 18 states: "Plaintiff is not entitled to recover under the doctrine of unclean hands."  (#124 National's ans., p. 7).

The court finds that National has not presented any evidence that Kollman has unclean hands.

Kollman's motions for partial summary judgment as to AD #'s 17 and 18 should be granted.

<u>Kollman's Motion 23 - AD #19 (risk not contemplated)</u>

Kollman assert that the risk was contemplated by the parties as something covered when the policies were purchased.

National responds that the parties did not contemplate coverage would exist for claims such as those alleged by Kollman.

Kollman replies that his judgment was based on a breach of fiduciary duty by National's insureds and is specifically covered under the Policy.

FINDINGS AND RECOMMENDATION - 43

Based upon the evidence before it, the court finds that a breach of fiduciary duty by National's insureds was a risk both contemplated and covered under the Policy.

Kollman's motion for partial summary judgment as to AD # 19 should be granted.

<u>Kollman's Motion 32 - AD #21 (bankruptcy discharge)</u>

Kollman argues that National is not discharged of its obligations even if Hateley receives a discharge of the judgment.

National responds that because Hateley's liability has been discharged in bankruptcy, there is no "Loss" under the policy and National cannot be held liable for the discharged debt.

The Policy contains the following language:  "Bankruptcy or insolvency of any Organization or any Insured Person shall not relieve the insurer of any of its obligations hereunder."  (#81 Philip aff., Ex. 2, p.18, ¶ 19).

ORS 742.031 provides in pertinent part that a policy of insurance:

> shall contain within such policy a provision
> substantially as follows:  "Bankruptcy or insolvency
> shall not relieve the insurer of any of its obligations
> hereunder.  If any person or his legal representative
> shall obtain a final judgment against the insured
> because of such injuries, and execution thereon is
> returned unsatisfied by reason of bankruptcy,
> insolvency or other cause, or if such judgment is not
> satisfied within 30 days after it is rendered, then
> such person or his legal representatives may proceed
> against the insurer to recover the amount of such
> judgment, either at law or in equity, but not exceeding
> the limit of this policy applicable thereto."

ORS 742.031.

    ORS 742.038 states:

       (1) A policy in violation of the Insurance Code, but otherwise binding on the insurer, shall be held valid, but shall be construed as provided in the Insurance Code.

       (2) Any insurance policy issued and otherwise valid which contains any condition, omission or provision not in compliance with the Insurance Code, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy been in full compliance with the Insurance Code.

ORS 742.038.

    All of the required language of ORS 742.031 is construed to be in the Policy.

       [T]he statute does give a claimant who obtains a judgment against the insured a direct right of action against the liability insurer. *Hecht v. James and Farmers Mut. Ins. Co.,* 218 Or, 251, 255, 345 P. 2d 246, 247-48 (1959), states that the statute "was enacted to void a rule that the insolvency of the insured avoided the liability of the insurer."

State Farm Fire and Cas. Co. v. Reuter, 299 Or. 155, 165 (1985) (discussing ORS 736.320 subsequently renumbered ORS 742.031).

    In contract law, "[w]here general and specific clauses conflict, the specific clause governs the meaning of the contract.  11 Richard A. Lord, Williston on Contracts, § 32.10 (4th ed. 1999).

    Here, the specific clause states that National is not relieved of its liability under the Policy as a result of the

FINDINGS AND RECOMMENDATION - 45

bankruptcy of Hateley.   The court finds that there is a loss under the Policy, and that National can be held liable for the discharged debt.

Kollman's motion for partial summary judgment as to AD # 21 should be granted.

### Kollman's Motions # 7, 11, 14, 19, 20, 24, 25, 26, 27, 28, 29 and 31

National did not oppose these motions (#110 National's Response to Kollman's First Motions, p. 1), and these motions are now moot as National dropped the affirmative defenses associated with these motions in its answer to the amended complaint (#124 National's Answer to Amended Complaint, pp. 5-8).

**V.**

### RECOMMENDATION

Based upon the foregoing, it is recommended that Defendant's motion for summary judgment (#78) be denied, and that Plaintiff's motions for partial summary judgment (#89) as to Defendant's affirmative defenses #'s 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 and 21 be granted, and denied as to affirmative defense # 10.

***This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals***.  **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district**

court's judgment or appealable order. *__The parties shall have ten__* *__days from the date of service of a copy of this recommendation__* *__within which to file specific written objections with the court.__* *__Thereafter, the parties have ten days within which to file a__* *__response to the objections__*. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _____31_____ day of January, 2007.


_____/s/_____
UNITED STATES MAGISTRATE JUDGE