IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DARYL J. KOLLMAN,

        Plaintiff,

    v.

NATIONAL UNION FIRE INS. CO.
OF PITTSBURGH, PA.,

        Defendant.

No. 1:04-cv-3106-PA (Lead Case)
CONSOLIDATED CASES

**ORDER**

_____

CELL TECH INTERNATIONAL, INC.,

Plaintiff-in-Intervention,

    v.

NATIONAL UNION FIRE INS. CO.
OF PITTSBURGH, PA.,

Defendant-in-Intervention.

**PANNER, District Judge:**

    In this dispute over insurance coverage, the remaining issue

is the amount of attorney's fees due Plaintiff Daryl Kollman.  I

1  - ORDER

award Kollman $1,029,814 in attorney's fees.

## BACKGROUND

In 2002, Kollman filed an action in Klamath County Circuit Court against Cell Tech International, Inc. (Cell Tech) and Cell Tech executives, including Donald Hateley.  Cell Tech tendered Kollman's complaint to National Union, which had issued a Executive and Organization Liability Policy to Cell Tech.  Cell Tech sought coverage for itself as well as for Hateley and others named as defendants in Kollman's lawsuit.

National Union responded that its liability policy did not cover Kollman's claims against Cell Tech or Cell Tech's officers and directors.  National Union relied primarily on the policy's exclusion for claims brought by an insured against another insured, the "insured-versus-insured" exclusion.

Throughout the underlying state court litigation, National Union denied any duty to defend Cell Tech or the individual defendants.  In 2004, the trial court entered judgment in the state court action, awarding Kollman $40 million against Hateley and another individual defendant for breach of fiduciary duty. See Kollman v. Cell Tech Int'l, Inc., 250 Or. App. 163, 279 P.3d 324 (2012) (affirming judgment), review denied, 353 Or. 410, 298 P.3d 1226 (2013) (two petitions).

Kollman then brought this action as a third-party claimant against National Union.  Cell Tech intervened, alleging National Union acted in bad faith by failing to settle with Kollman for the policy limit of $5 million.

2  - ORDER

While the state court appeal was pending, Hateley filed for Chapter 7 bankruptcy, listing the $40 million judgment as the estate's principal liability.  Helen Frazer, as bankruptcy trustee, brought an action in this court of behalf of the estate against National Union for breach of contract.  Kollman settled with Frazer, and Bruce Moore, Kollman's attorney here and in the state court action, became Frazer's attorney in the estate's action against National Union.  That action was consolidated with this action.

In 2007, this court held that Kollman, as a third-party claimant, could recover from National Union.  The Ninth Circuit affirmed.  <u>Kollman v. Nat'l Union Fire Ins. Co.</u>, 542 F. App'x 649 (9th Cir. 2013).

After the Ninth Circuit affirmed, this court determined that Cell Tech was entitled to coverage for the costs of defending its executives (but not its own costs) in the state court litigation up to September 2004, when the state court entered judgment in Kollman's favor.  I ruled Kollman was entitled to the remainder of the $5 million policy limit after deducting Cell Tech's costs. Based on National Union's stipulation that it will pay Cell Tech $880,745 for defense costs, Kollman is due the remainder of the policy limit, $4,119,255.

Cell Tech and National Union have stipulated to the amount of attorney's fees and prejudgment interest due Cell Tech.  The remaining issue is the amount of attorney's fees due Kollman for litigating this action both here and on appeal.

3  - ORDER

**STANDARDS**

State law governs the award of attorney's fees in a diversity action. <u>Kabatoff v. Safeco Ins. Co.</u>, 627 F.2d 207, 210 (9th Cir. 1980). Here, Kollman is entitled to attorney's fees under Oregon law. Oregon Revised Statutes § 742.061(1) mandates that if an insurer does not settle a claim within six months of the filing of a proof of loss, "and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon." Reasonableness is "the touchstone for the amount of the award" of attorney's fees under section 742.061(1). <u>Strawn v. Farmers Ins. Co.</u>, 353 Or. 210, 217, 297 P.3d 439, 444 (2013).

**DISCUSSION**

The parties dispute the method to calculate a reasonable award of attorney's fees. National Union argues for the lodestar method, "by which the attorney is awarded a fee based on a reasonable hourly rate, multiplied by a reasonable number of hours devoted to work on the case," with possible upward or downward adjustments such as for risk of loss or the quality of the lawyer's work. <u>Strawn</u>, 353 Or. at 217, 297 P.3d at 445. Kollman argues for the percentage method, "which sets the fees by calculating the total recovery secured by the attorneys and awarding them a reasonable percentage of that recovery." <u>Id.</u>

4 - ORDER

The Oregon Supreme Court has left open the question of choosing a
method, noting that "neither method is inherently better than the
other or particularly satisfying in terms of predictability or
consistency." Id., 353 Or. at 220 n.6, 297 P.3d at 446 n.6
(citing Alba Conte, 1 Attorney Fee Awards § 2:7 at 85 (3d ed.
2004)).

## I.   The Percentage Method Is Appropriate Here

In arguing for the percentage method, Kollman cites his
contingency fee agreement with Moore and Associates, which gives
the attorneys one-third of any judgment.  A one-third share of
the recovery here would be $1,373,085.  Moore states his law firm
"will not double-dip" by taking one-third of the recovery in
addition to the fees awarded here.  Moore Decl. 11, ECF No. 235.
As a fallback argument, Kollman contends that if the court uses
the lodestar method, the total fee award should be $1,470,820
after applying enhancements and multipliers.

National Union objects to the percentage method, contending
that it applies "only where a party has succeeded in creating a
common fund that benefits others," such as a class action.  Nat'l
Union Opp'n at 3.  National Union argues that under the lodestar
method, with adjustments, fees should be set at $346,639.30.

I disagree with National Union because in Strawn, the Oregon
Supreme Court did not restrict the percentage method to common
fund recoveries.  Under Strawn, this court has discretion to use
either the lodestar method or the percentage method under these
circumstances, and may take a "blended approach," calculating

fees under both methods and comparing the results.  See Strawn, 353 Or. at 219-20, 297 P.3d at 446.

In Strawn, the Oregon Supreme Court discussed a Third Circuit study on whether the lodestar method's deficiencies outweighed its benefits.  Id., 353 Or. at 217-18, 297 P.3d at 445 (citing Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237 (1986) (Task Force).  The Task Force found that the lodestar method "created an unwarranted 'sense of mathematical precision,' was insufficiently objective, was burdensome and unmanageable for courts, and encouraged lawyers to devote excessive or unnecessary hours to the litigation."  Id., 353 Or. at 218, 297 P.3d at 445 (citing Task Force, at 246-49). The Task Force concluded that the lodestar method would be appropriate for statutory fee cases, when "the goal is to 'encourage private enforcement of the statutory substantive rights,'" which often involve civil rights or employment discrimination issues.  Id. (citing Task Force, at 250).  Such cases may be difficult and time-consuming, but result in very low monetary recoveries, or declaratory and injunctive relief without any monetary damages.  Id. (citing Task Force at 253).  But the Task Force "advocated abandoning the lodestar method in traditional common fund cases, as well as in statutory fee cases that are likely to result in a settlement fund from which adequate counsel fees can be paid.  For those cases, the task force concluded, a percent-of-fund method was the preferable approach."  Id., 353 Or. at 218-19, 297 P.3d at 445-46 (emphasis

6  - ORDER

added).  That reasoning applies here, because the fee-shifting statute, section 742.061(1), "is not designed to ensure the availability of counsel to pursue socially desirable policies in cases that counsel might otherwise not be willing to pursue.  The statute instead serves the different purpose of encouraging settlement of insurance claims without litigation."  Id., 353 Or. at 221 n.7, 297 P.3d at 447 n.7.  Awarding a percentage of the recovery serves the statute's goal of encouraging insurers to settle claims.  I conclude that the percentage method is preferable to the lodestar method here.

## II.  Applying Oregon's Factors for Determining Attorney's Fees

Whichever method the court uses, it must consider the factors in Or. Rev. Stat. § 20.075(1) and (2) when determining a reasonable attorney's fee.

### A.  Factors in Section 20.075(1)

Subsection 20.075(1) is intended to guide courts when deciding whether to award fees, but it is not helpful here in determining a reasonable amount of fees.  I agree with National Union that the factors in subsection 20.075(1) are not relevant here.

Kollman argues that factor (1)(e), the parties' objective reasonableness and diligence in pursuing settlement, weighs in his favor.  I will not attempt to resolve the parties' dispute over which side was at fault for the failure to settle.  I previously held that National Union's affirmative defenses, although some were rejected, were not unreasonable.  Kollman v.

National Union Fire Ins. Co., ECF No. 430, 2015 WL 900947, at *3
(D. Or. March 2, 2015) ("Plaintiffs have not shown that National
Union's denial of coverage was unreasonable or in bad faith.").

### A.  Factors in Subsection 20.075(2)

The factors in subsection 20.075(2) guide the court in
determining the amount of a reasonable fee.  I address these
factors in order.

> **(a) The time and labor required in the proceeding, the
> novelty and difficulty of the questions involved in the
> proceeding and the skill needed to properly perform the
> legal services.**

This litigation lasted more than ten years, in part because
of the stay pending the appeal of the underlying state court
judgment.  Moore and his law firm billed more than 1800 hours at
trial and on appeal.  Although Kollman's claims in this action
concerned fairly standard insurance contract issues, Kollman's
attorneys needed to master the voluminous record from the
underlying state court litigation.  National Union raised more
than twenty affirmative defenses.

> **(b) The likelihood, if apparent to the client, that the
> acceptance of the particular employment by the attorney
> would preclude the attorney from taking other cases.**

Kollman argues that this factor weighs in his favor.  But as
National Union points out, Moore's declaration notes that he and
his firm were able to accept other cases during the past seven
years, including winning $2 million after a jury trial, $700,000
in a 2010 insurance coverage action, $3 million in a 2011
insurance matter, $950,000 from a settlement reached mid-trial in

8  - ORDER

2012, and a $1.4 million settlement in 2013.

### (c) the fee customarily charged in the locality for similar legal services.

This factor is not as relevant as it would be for the lodestar method.  I need not resolve whether the hourly rates charged by Moore and his associates should raised, as Kollman argues.

### (d) the amount involved in the controversy and the results obtained;

Kollman will recover about $4.1 million from the $5 million policy limit, which is a good result.  But Kollman's attorneys did not succeed in preventing Cell Tech from deducting defense costs from the policy limit.  Kollman also failed to obtain prejudgment interest.

### (e) The time limitations imposed by the client or the circumstances of the case.

This factor is not relevant here.

### (f) The nature and length of the attorney's professional relationship with the client.

Moore and his law firm have represented Kollman for more than twelve years, here, in the underlying state court litigation, in a federal tax lien action, and in other matters. If Moore had withdrawn as counsel, it would have been difficult for Kollman to obtain comparable representation.

### (g) The experience, reputation, and ability of the attorney performing the services.

Moore and his associates have done an excellent job in this action.  National Union states that it "does not quarrel with

Moore's experience, reputation or abilities."  Nat'l Union Opp'n
9.

**(h) Whether the fee of the attorney is fixed or contingent.**

This factor weighs in Kollman's favor.  But I note that this
insurance coverage action is not as risky as the underlying state
court action because Oregon law essentially guaranteed that
Kollman would be awarded attorney's fees if he prevailed in the
state court action.  See Precision Seed Cleaners v. Country Mut.
Ins. Co., 976 F. Supp. 2d 1228, 1243 (D. Or. 2013) (Or. Rev.
Stat. § 742.061(1) "reduc[ed] the impact of the contingent nature
of the case").  Furthermore, once this action was on appeal, the
risk to Kollman was reduced because he had prevailed in this
court on the coverage issues.

**III.  The Reasonable Attorney's Fee Here**

The Strawn court noted that courts could compare the fee
using the lodestar method with the fee using the percentage
method.  Here, Moore and his firm billed a total of about
$280,000 in attorney's fees for this action and the appeal.
Kollman contends that the final lodestar amount should be
$1,470,820 after increases in the hourly rates and multipliers
for contingency.  National Union calculated a total attorney's
fee, after adjustments, of $346,639.30.  In light of the
significant recovery Kollman obtained, and the number of years
this litigation lasted, the lodestar fee without enhancements is
too low.

On the other hand, although Kollman obtained a significant

10 - ORDER

recovery, he did not succeed on several arguments during this litigation, including on Kollman's claim for prejudgment interest and on Cell Tech's entitlement to defense costs.  The one-third percentage requested by Kollman would result in fees of $1,373,085.  Considering the statutory factors, I conclude that Kollman's requested percentage, 33%, is too high.

After presiding over this action for more than ten years, I conclude that 25% is the appropriate percentage, yielding total attorney's fees of $1,029,814.  This adequately compensates Moore and his associates for a lengthy and complex litigation that resulted in a recovery of $4.1 million.

## CONCLUSION

Kollman's motion for attorney's fees (#435) is granted. Kollman is awarded $1,029,814 in attorney's fees.  The parties are to submit proposed forms of judgment within fourteen days of this order.

IT IS SO ORDERED.


DATED this **20**day of August, 2015.


OWEN M. PANNER
U.S. DISTRICT JUDGE


11 - ORDER